UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GRETA BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:16-cv-00019-SEB-DML |
| | ) | |
| BLUE SKY CASINO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Greta Baker ("Baker") has brought this action against her former employer, Blue Sky Casino, LLC, d/b/a French Lick Resort and Casino ("French Lick"), alleging that she was subjected to a gender-based hostile work environment and was retaliated against for raising the issue of sexual harassment, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). This cause is before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 27], filed on March 29, 2017. For the reasons detailed in this entry, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

<u>**Factual and Procedural Background**</u>

**Defendant's Business and Workplace Conduct Policies**

The French Lick Casino first opened on November 3, 2006, offering slot machines, table games (blackjack, roulette, craps, and poker), a high limit gaming area, VIP services, live entertainment, and various dining options. Declaration of Jennifer Stevens [Dkt. No. 28-1 ("Stevens Decl.")] ¶ 4. French Lick maintains workplace policies

1

prohibiting discrimination, harassment, and retaliation. *Id.* ¶ 6. Baker has testified that

throughout her employment, she was familiar with these policies. Deposition of Greta

Baker [Dkt. No. 28-2 ("Baker Dep.")] at 87-88. French Lick had in place a hotline and a

complaint process allowing employees to report discrimination, harassment or retaliation

to a manager, any other member of the management team, or to its Human Resources

Department. *Id.* at 89. Baker admits that she knew of the process available for employees

seeking to complain about workplace discrimination or harassment. *Id.*

In addition to its anti-discrimination and anti-harassment policies, French Lick's

Employee Handbook contained a Workplace Violence Policy that read, in pertinent part:

> French Lick is concerned about increased violence in society, which
> has also filtered into many workplaces throughout the United States.
> As a result, we have developed the following "zero-tolerance" workplace
> violence policy to prevent incidents of violence from occurring at French
> Lick. French Lick expressly prohibits any acts or threats of violence by
> any associate against any other associate, vendor, guest or patron on or
> off company premises at any time. Any associate who engages in any
> threatening behavior or acts of violence or who uses any obscene, abusive
> or threatening language or gestures will be subject to immediate
> disciplinary action, up to and including termination.

Stevens Decl. ¶ 5 and Ex. A. Baker has received a copy of the Employee Handbook

as well as this policy. Baker Dep. Ex. 8.

**Plaintiff's Employment with French Lick**

French Lick hired Baker as a Player Services Supervisor at the French Lick Resort

and Casino on or around November 7, 2015. Baker's supervisor was Michelle Moon,

Manager of Player Services. Baker was responsible for assisting Moon in the

management and marketing of the player card program as well as supervising player

services representatives. According to Baker, Moon subjected Baker to sexual harassment on three separate occasions over the course of Baker's six-month employment at French Lick.

### First Allegation of Sexual Harassment

Early in Baker's tenure, on or around December 7, 2014, Moon, Baker, and two other employees engaged in a discussion of tattoos while they were together in Moon's office. The conversation turned to body piercings, and Baker commented that she did not have any piercings other than in her ears. After the other employees departed, Moon leaned toward Baker in a way that exposed her breasts and confided that she had four piercings in her "twat." Baker Dep. at 107. Moon "held up a cross" and said that the piercings were like "a cross for a sanctuary." *Id*. Baker replied that it "sounds to me more like a cage. It's not attractive to me." *Id*. Moon rubbed her vaginal area and told Moon that she no longer had the piercings because "her guy" did not like them. *Id*. at 108. Nothing further was said between them on this subject. Baker states that this encounter made her feel uncomfortable, as though Moon were making a sexual advance, but she never told Moon that this conversation had offended her. *Id*. at 109. Baker later opined that Moon was insinuating that she wanted Baker to engage in some form of sexual behavior with her. *Id*. at 113.

Baker did not report this conversation to anyone in French Lick's Human Resources Department until nearly two months later, in late January 2015. *Id*. at 115. She said she feared that, had she reported the problem to Human Resources, she would not be able to transfer to another department under a different supervisor as she wished, and that

she "didn't want to rock the boat over some woman that was making bad choices." *Id*. at 115-16.

When Baker reported the December 2014 incident involving Moon's piercings to French Lick's Human Resources Department, she did so via her January 31, 2015 response to a French Lick questionnaire. *Id*. at 114-15. The Human Resources Department had requested that its new employees, including Baker, complete a questionnaire to assess how they viewed their employment. Baker's evaluation read as follows:

> Overall, I have tried to work successfully in this small office with 14 different personalities and attitudes, however, it's very hard to be professional among a Manager that isn't professional. My respect ceased to exist when Michelle Moon, my Manager bragged that she has had several piercings, including two different piercings on her vagina. Representing a cross. I suggested to her that it sounded more like a cage around her privates. I'm not a judgmental person, I'm only shocked that she told me and her employees this information. Since that day she told us about it; I haven't looked at her with respect since then. And of course she told us that that she doesn't wear them anymore since her guy doesn't like them so I am just picturing a slashed up vagina that looks like a shredder got ahold of her, every time I make eye contact with her it comes to my mind and gives me cold chills. I'm not sure of the date that this conversation happened, I just lost respect for her as a boss and knew that I was planning to transfer to a different department ASAP. And beside that fact, she is very moody, bitchy and of course her BFF Evan Tinkle can seem to do no wrong in her eyes. Even though, Amanda, Karrie and I make up for his slack. He is very unproductive and the amount of breaks that he takes is ridiculous. Evan and Michelle both are very very comfortable in this job as if they can do what they want and no one else can do their jobs.

Stevens Decl. ¶ 14. When Jennifer Stevens, French Lick's Employee Relations Manager, learned of Baker's report, she conducted an investigation by speaking with each member

of the French Lick staff individually.[1] Dkt. No. 29-13 (Deposition of Jennifer Stevens ("Stevens Dep.") at 15-16). Moon denied Baker's allegations, but Stevens informed Moon that inappropriate conversations would not be tolerated. *Id*. at 20-21. After completing her investigation, Stevens concluded that she could not substantiate Baker's allegations about the piercings incident. *Id*. at 21.

### Second Allegation of Sexual Harassment

The second instance of sexual harassment alleged by Baker occurred on February 8, 2015, when Baker, while in an office with Moon and two other supervisors, was presented with an inappropriate sex-related object. Moon inquired of the others present whether she should introduce Baker to "black thunder," which brought smiles from the others. Baker Dep. at 147. Moon then handed Baker a gift bag containing a black dildo. Baker remarked upon discovering the contents, "God I hope that's not been used because I just touched it." *Id*. at 148. Moon laughed and reached forward to retrieve the bag from Baker telling her that she could not keep it. Baker commented to her colleague, Karrie Napier ("Napier"), that the incident was "weird." *Id*. at 151-52. At some later point, Baker learned that the dildo was a gag gift that Moon had also given to other employees on other occasions. *Id*. at 150. Baker, however, has testified in conjunction with this case that she viewed Moon's presentation of this item as a sexual advance. *Id.* at 169-70.

---

[1] Baker asserts in her summary judgment briefing that she informed another French Lick manager, Steven Spencer, about the piercing incident. Pl.'s Resp. at 20. Spencer asked Baker to put the allegations in writing and submit them to Stevens, and he made Stevens aware of Baker's allegations shortly before Baker submitted the January 31, 2015 questionnaire. Stevens Dep. at 14-15.

Baker also testified that she emailed Stevens to report the dildo incident (Baker Dep. at 152), but Stevens testified that no such email or any other communication from Baker was received by her regarding this incident. Stevens Dec. ¶ 15.

**Third Allegation of Sexual Harassment**

Baker further asserts that on an unspecified date in February 2015, she heard Moon comment to another employee that "some of the best sex you can have is with the church going kids because they're rebellious." Baker Dep. at 166. Although Moon had not initially directed this remark to Baker, she made her next comment to Baker saying, "It doesn't matter if it's boys or girls. It's all good." *Id.* at 167. No further conversation ensued. *Id.* at 168. Baker has testified that she thought Moon had only been trying to be funny. *Id.* She now states that, based at least in part on this comment, she believes Moon possesses homosexual tendencies.[2] *Id.* at 110-11.

Baker never reported this comment to French Lick Human Resources nor did she report it to the Equal Employment Opportunity Commission ("EEOC") or include it her Complaint. Dkt. No. 1 ("Compl."); Dkt. No. 29-14. In explaining this omission, Baker said that she "did not feel it was pertinent enough" and in any event the earlier portion of that conversation had not been directed towards her. Baker Dep. at 168. Nonetheless, this account has now been included in Baker's summary judgment briefing. Pl.'s Resp. at 5, 8, 13-16.

---

[2] French Lick notes for the record that Moon is happily married to a man and recently gave birth to a second child. Declaration of Michelle Moon [Dkt. No. 29-5] ¶ 4.

**Plaintiff's Disciplinary Infractions**

Over the course of her employment, Baker was written up by Moon on several occasions for workplace infractions and violations of company policy, to wit, being late to work on several occasions; missing work; cursing in the office and failing to follow proper office etiquette; non-adherence to company and department policies on maintaining confidential information; failing to inform her manager of her decision not to take a lunch break; violating the employee dress code; calling Moon a "bitch" behind her back; and referring to co-worker, Evan Tinkle ("Tinkle"), as a "lazy ass petunia." Stevens Decl. ¶ 10; Baker Dep. at 117-30, 135, 194-95. French Lick recounts these infractions in its summary judgment briefing because, although Baker did not reference the write-ups in her EEOC charge, she maintains that they were issued in retaliation for her reports of sexual harassment. Dkt. No. 28 ("Def.'s Br.") Br. at 4-6.

**Plaintiff's Reports to French Lick's Human Resources Department**

Baker outlines in her Complaint each report that she had made to French Lick's Human Resources Department. On or around February 7, 2015, she told Human Resources that "she feared Moon would retaliate against her due to her complaints." Compl. ¶ 13. On or around February 20, 2015, she met with Stevens "to discuss Moon's sexual harassment and her concerns with Moon's unfavorable treatment of her. *Id*. ¶ 15. And on March 5, 2015, she spoke with Stevens about verbal warnings that she had received from Moon regarding her attendance and attitude because "she had never received any warnings prior to this time." *Id*. ¶ 16.

On the following day, March 6, 2015, Baker asserts that she again complained about Moon's behavior to the Human Resources Department and expressed her concerns that she was receiving warnings and write-ups in retaliation for complaints she had made against Moon. *Id*. ¶ 17.

On March 11, 2015, and again on March 19, 2015, Baker again complained to the French Lick Human Resources Department that Moon was treating her unfairly and retaliating against her based on her complaints that Moon "was bullying her and treating her differently than her co-workers." *Id*. ¶¶ 18-19. Finally, on April 11, 2015, the day following Moon's write up for having violating French Lick's uniform policy, Baker sent an email message to Stevens "expressing her concerns about the increase in write-ups that she was receiving from Moon." *Id*. ¶ 21.

Each time Baker complained to Stevens she mentioned that she feared retaliation by Moon. Stevens assured Baker that French Lick does not engage in or tolerate retaliation and that, so long as Baker was not violating any workplace policies, she need not worry. Stevens Dep. at 23, 27. However, Stevens did warn Baker that she was not exempt from being written up for any policy violation she might commit. *Id*. at 28. It was Stevens's practice, when Baker or another employee was issued a write up, to review the infraction to confirm that a violation of a particular policy had occurred. *Id*. at 28-29. In a similar vein, whenever Moon was preparing to issue a write-up to Baker, Moon first consulted Stevens to secure her agreement that the write up was appropriate. *Id*. at 30.

**Plaintiff's Violation of French Lick's Workplace Violence Policy and Termination**

French Lick maintains that Baker's violation of its Workplace Violence Policy was her most egregious offense and fully warranted her termination. Stevens Decl. ¶¶ 12-13. On May 24, 2015, Stevens received a written report from French Lick employee Ricky Thompson, a player services representative, that Baker had made verbal threats directed towards Moon and co-worker Tinkle. Stevens Decl. ¶¶ 9-10; Exh. B. Thompson recounted the statement by Baker that she was tired of the drama, upset that she was being investigated for her statement about Tinkle, and that if she saw Moon outside of work she would "kick her ass as well as Tinkle's" and that "a [H]arley [D]avison biker gang would beat up" Tinkle. Exh. B. Napier substantiated Thompson's report in an e-mail message to Stevens, Moon, and Moon's supervisor, Laura Terwiske ("Terwiske"). Stevens Decl. Exh. C.

Baker has denied making these statements. Pl.'s Resp. at 6; Baker Dep. at 134. Nonetheless, she admits that such statements, if they had made by her, would violate French Lick's Workplace Violence Policy. Baker Dep. at 197-99. Terwiske suspended Baker from work for three days based on this incident. Stevens Dep. at 37.

Following the three-day suspension, Baker's employment was terminated on May 27, 2015 based on her violation of the French Lick Workplace Violence Policy by having threatened Moon and Tinkle. Stevens Decl. ¶ 12. Baker maintains that French Lick failed to provide any reason or explanation for her termination; her understanding was simply that French Lick "didn't want to bring her back following the conclusion of her

suspension." Compl. ¶ 23; Baker Dep. at 137-38. Baker cannot identify by name the final decision maker with regard to her termination. Baker Dep. at 139. French Lick maintains, and Baker does not dispute, that her numerous prior disciplinary infractions did not factor into her termination, given the seriousness of her violation of the Workplace Violence Policy. Stevens Decl. ¶ 13.

**The Instant Litigation**

On February 9, 2016, Baker filed her Complaint after receiving a right to sue notice from the EEOC. Dkt. No. 29-14. The Complaint alleges that she was sexually harassed by Moon and retaliated against for reporting these incidents by being written up for workplace infractions and ultimately terminated from her employment on May 27, 2015. Compl. at 2-4. She has brought a hostile work environment claim based on the following "examples" of sexual harassment outlined above, to wit, Moon's comment about vaginal piercings and touching of herself, and Moon's inappropriate gag gift. Compl. at 2-3; Pl.'s Resp. at 7-16. Baker asserted that the sexual harassment she suffered was extensive and not limited to the situations set forth in her complaint, though she mentions no others. Compl. at 2.

French Lick moved for summary judgment on March 29, 2017. Dkt. Nos. 27 and 28. Baker responded on April 26, 2017 [Dkt. No. 30 ("Pl.'s Resp.")], and French Lick filed its reply on May 10, 2017. Dkt. No. 31. The motion is ripe for ruling by the Court.

<u>**Legal Analysis**</u>

## I.      Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the non-movant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the non-movant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II.      Plaintiff's Claims

Baker asserts two claims against French Lick based on Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1):  "hostile work environment" and retaliation. After careful review of the undisputed evidence in the light of the applicable legal principles, we conclude that summary judgment is warranted on both theories of liability.

### A.  Hostile Work Environment Claim

Citing Moon's comments about her piercings and touching of her genital area, Moon's presentation of the gag gift of a dildo, and Moon's comment about having sex with "church-going kids," Baker alleges a hostile work environment claim in violation of Title VII. Our review of these allegations, however, taken as true, lead us to conclude that

this level of workplace misconduct fails to cross the threshold of liability demanded by Title VII.

A claim of hostile work environment by sexual harassment is a well-established, frequently litigated theory of relief under Title VII's prohibition on sex discrimination. 42 U.S.C. § 2000e-2(a)(1); *Benders v. Bellows & Bellows*, 515 F.3d 757, 768 (7th Cir. 2008). To survive summary judgment based on her sexual harassment claim, Baker must show the following: (1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her gender; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). "In addition to the questions of severity and pervasiveness, in determining whether an environment is sufficiently abusive to be actionable," the court is guided by factors including "whether [the] conduct is 'physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 897 (7th Cir. 2016) (quoting *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012)).

The Supreme Court and the Seventh Circuit have cautioned that "Title VII is not a civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Patton v. Keystone RV Co.*, 455 F.3d 812, 815 (7th Cir. 2006). Rather, the statute protects only against work environments sufficiently abusive that they "alter the conditions of employment." *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986)). We have often cited the

following description of the dividing line provided by the Seventh Circuit in *Baskerville v. Culligan International Co.*, 50 F.3d 428 (7th Cir. 1995):

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

50 F.3d at 430. Because the conduct at issue must be either severe *or* pervasive, we measure allegations according to a sliding scale: at one end of the analytical spectrum, one exceptionally severe incident may be sufficient to trigger liability; at the other end, an unrelenting string of less grave provocations may have the same effect. *Patton,* 455 F.3d at 816; *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000).

Thus, while there is no bright line test for severity, *Baskerville* and similar Seventh Circuit cases serve as a "yardstick" and furnish helpful rules of thumb. *See Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1144 (7th Cir. 1997). Here, the facts surrounding each of the three incidents identified by Baker are readily distinguishable from situations in other cases found to be severe enough to constitute actionable harassment.

First, we note that in none of Baker's alleged incidents did Moon actually touch Baker—sexually or otherwise—and none can reasonably be interpreted to have been physically threatening. *Cf. Baskerville,* 50 F.3d at 431 ("Mr. Hall, whatever his qualities as a sales manager, is not a man of refinement, but neither is he a sexual harasser. He never touched the plaintiff . . . . He made no threats.").

Second, none of the incidents cited by Baker amounts to a solicitation to engage in sexual activity. *Cf. Patton,* 455 F.3d at 816 (citing *Baskerville,* 50 F.3d at 430). The

incident in which Moon allegedly leaned in toward Baker, exposing her chest, followed by rubbing the area where she had had piercings, comes the closest, but not very close to being such an overture. Other courts in our circuit have found similar activity not to qualify as solicitations to sexual activity. *See, e.g., EEOC v. Caterpillar, Inc.*, 503 F.Supp. 2d. 995, 1045 (N.D. Ill. 2007) (plaintiff's supervisor "put his hands on his pants and moved his penis around in a circular motion after having confided that he was desperate and needed a girlfriend"). We do not view the conduct of which Baker complains as comparable to other, much more severe situations.

Further, contrary to her characterization of the tasteless "gag gift" as a sexual solicitation, Baker herself recognizes that Moon had previously deployed this prank with other employees. The Seventh Circuit has declined to find actionable harassment in such circumstances. *See, e.g., Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005) ("Sexual horseplay differs from sex *discrimination*, and Title VII covers only discriminatory conduct."), and we must follow its lead here.

Even if none of the three allegedly sexually harassing incidents considered separately is severe enough to give rise to an inference of a hostile work environment, we also must determine whether, considered as a whole, they comprise misconduct severe *or* pervasive enough to trigger liability. *See Vance v. Ball State Univ.*, 646 F.3d 461, 470–471 (7th Cir. 2011) ("When evaluating a hostile work environment claim, we consider 'the entire context of the workplace,' not the discrete acts of individual employees.") (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002)).

French Lick does not dispute, for purposes of summary judgment, that Baker subjectively found Moon's conduct severe and pervasive such that it altered her working environment. Objectively, however, French Lick challenges both the seriousness and pervasiveness of these episodes, jointly and severally, and French Lick finds considerable support for its arguments in Seventh Circuit case law upholding summary judgment for employer defendants in cases involving far more serious conduct than that experienced by Baker. Def.'s Br. at 17-18.

We agree with French Lick that Baker's three incidents simply do not meet the standard of seriousness or pervasiveness to be actionable under Title VII. Baker's first two allegations concerning the piercings conversation and the gift bag incident did not create an objectively hostile work environment, particularly when Title VII is "not designed to purge the workplace of vulgarity." *Baskerville,* 50 F. 3d at 430. As for Moon's comments about having sex with "church-going kids," even Baker did not deem that comment serious enough to warrant reporting to French Lick or the EEOC. It is also telling that this remark by Moon was not initially addressed to Baker. *See Smith v. Northeastern Illinois Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) (when harassment is "directed at someone other than the plaintiff, the 'impact of such "second-hand harassment" is obviously not as great as the impact of harassment directed at the plaintiff.'"). Baker has cited not a single case based on conduct similar to that which she alleges where a court determined that a hostile work environment existed. Pl.'s Resp. at 7-16. Accordingly, we hold that none of the incidents cited by Baker, either alone or

considered together, was severe enough to create a hostile work environment that exposed her to sexual harassment.

Nor do Baker's allegations describe an environment in which sex-based harassment was "pervasive." Even including the fact that all three incidents involving Moon took place over a three-month period, from December 2014 to February 2015, the number and frequency of the incidents do not qualify as unrelenting. *See Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that eight gender-related comments over several years was a pattern "too isolated and sporadic to constitute severe or pervasive harassment"); *Baskerville,* 50 F.3d at 431 ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."). These were clearly intermittent events, and Baker does not advert to any other incidents of harassment occurring during the second three-month period of her employment, February to May 2015.

Moon's comments and conduct may well be viewed as inappropriate and unbecoming, especially from a supervisor, but they fall well short of the required showing to support liability. This conclusion is consistent with the Court of Appeals' analysis of similar claims. *See Mercer v. Cook County*, 527 Fed. Appx. 515, 521 (7th Cir. 2013) ("boorish or offensive stray remarks that were neither severe nor pervasive enough to create an objectively hostile work environment"); *McPherson v. City of Waukegan*, 379 F.3d 430, 438-39 (7th Cir. 2004) (listing cases that distinguish between "harassing and merely objectionable conduct").

Baker's sexual harassment claim fails for the additional reason that Moon's conduct was not shown to be tied to Baker's gender. Same-sex harassment claims are cognizable under Title VII only if "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]*. . . because of . . . sex.'" *Lord v. High Voltage Software, Inc.*, 839 F. 3d 556, 562 (7th Cir. 2016) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting 42 U.S.C. § 2000e–2(a)(1)) (alteration in original).[3]

The Seventh Circuit has rejected a sexual harassment claim where the plaintiff argued, as Baker has, that two alleged instances of harassment had sexual overtones. *Lord*, 839 F.3d at 562. In *Lord*, the same-sex colleague poked and smacked Lord on the

---

[3] We do not think the remark allegedly made by Moon regarding sex with boys or girls involved in church activities actually warrants more than a passing comment regarding whether the comment evinces in some fashion same-sex sexual harassment. If ever the descriptive phrase "stray remarks" is appropriate, it seems that this is such a situation. Nonetheless, in an excess of judicial indulgence, we note that in hostile work environment cases where the parties are of the same sex, there must be some evidence to support an inference of harassment on the basis of sex. *Lord*, 839 F.3d at 562 (citing *Oncale*, 523 U.S. at 80 ("The same does not hold true for same sex harassment cases absent some evidence that the harasser was homosexual."); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F. 3d 1058, 1062 (7th Cir. 2003), *overruled on other grounds by Hively*, 853 F.3d 399 ("Therefore, in same-sex harassment cases, the central question is whether the harassment occurred 'because of the plaintiff's sex.'")). The Supreme Court has provided two examples of such evidence: (1) the harasser's use of "such sex-specific and derogatory terms" so as to make it clear that she "is motivated by a general hostility to the presence of members of the same sex in the workplace"; and (2) "direct comparative evidence about how the alleged harasser related members of both sexes in a mixed-sex workplace." *Oncale*, 523 U.S. at 80-81. While the Seventh Circuit has held that these examples are not exhaustive, *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999), the record must contain some evidence from which a trier of fact could infer that the plaintiff was harassed because of her sex. *EEOC v. Sears Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). This record before us is entirely devoid of such evidence.

buttocks and grabbed him between his legs. *Id*. In disposing of the plaintiff's claim, the Court of Appeals noted that there was nothing "explicit" or "patently indicative of sexual arousal" on the part of the colleague, and the court highlighted the requirement that conduct occur because of a plaintiff's sex. *Id*. (citing *Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."). Moon's gift bag antics and her comment about sex with church kids—while inappropriate workplace behavior—were little more than off color, crude jokes. Clearly, this conduct was not so "explicit or patently indicative of sexual arousal" as to be viewed as related to Baker's gender.

Recently, in *Brown v. Wisc. Dept. of Corrections, et al.*, 2016 WL 5121756 (E.D. Wis. Sep. 20, 2016), *vacated, in part, on other grounds by Brown v. Wisc. Dept. of Corrections, et al.*, 2017 WL 280716 (E.D. Wis. Jan. 20, 2017), another district court in this circuit rejected sexual harassment claims that were similar but significantly more extensive than those advanced here by Baker. The plaintiff in *Brown* claimed that her female supervisor engaged in several acts of harassment, including: kissing plaintiff on the mouth; remarking on a daily basis about her preference for dating married people, anal sex, and sex toys; stating that a room "smelled like pussy"; kissing plaintiff on the forehead; exposing her bra and breasts to plaintiff; and telling plaintiff she was cute and if they were partners, she could put plaintiff on her health insurance policy. *Brown*, 2017 WL 5121756 at *2. The court identified as the relevant inquiry whether the offensive conduct took place because plaintiff was a woman. *Brown,* 2017 WL 280716 at *4.

Because plaintiff presented no evidence regarding how the plaintiff treated men, she failed to establish that the harassment occurred because of her sex. *Id. at* *5.

Similarly, Baker is claiming that Moon "used sexual language and engaged in sexual behavior—as in language and behavior related to the act of sex—around her." *Brown*, 2017 WL 280716 at *4. She speculates on this basis that Moon has homosexual tendencies. This is not enough; Baker "must present more than inferences supported by speculation or conjecture." *Id.*

Baker has failed to establish that Moon's conduct was directed at her because of her gender. Having failed to establish that the conduct directed at her was gender-based and that it was severe or pervasive to such an extent that it altered the conditions of her employment, we grant summary judgment in favor of French Lick on Baker's Title VII sexual harassment claim.

**B.  Retaliation Claim**

Baker has also advanced a claim of retaliation asserting that French Lick terminated her employment due to her complaints of sexual harassment and that Moon issued her write-ups after she made these complaints. Title VII prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one. 42 U.S.C. § 2000e-3a; *see Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc*., 224 F.3d 701, 704 (7th Cir. 2000), *overruled on other grounds by Hively v. Ivy Tech Comm. Coll. of Ind*., 853 F.3d 399 (7th Cir. 2017). To make out a claim of retaliation under Title VII, Baker must show that:  (1) she engaged in a statutorily protected activity; (2) she experienced a materially

adverse action; and (3) a causal connection between the protected activity and adverse employment action.[4] *See Harden v. Marion County Sheriff's Dept.*, 799 F.3d 857, 861-62 (7th Cir. 2015).

Baker's retaliation claim, like her other claims, must comport with the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Under *Ortiz*, regardless of whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp.*, 411 U.S. at 792 or some other framework to evaluate a plaintiff's retaliation claim, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *id.* at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. A presumption of discrimination is triggered after a *prima facie* case is established. Only then does the burden shift "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. When the employer does so, the burden shifts back to the plaintiff, who must present evidence that

---

[4] Baker concedes that she cannot identify any other French Lick employee(s) who also complained about Moon's behavior and were treated more favorably. Accordingly, we omit any discussion of the similarly situated employee requirement as part of the "indirect method of proof" set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *Id.* at 804.

After careful review, we conclude that Baker's retaliation claim fails because she is unable to satisfy all of the required elements of a Title VII retaliation claim. Even if she had succeeded in establishing a *prima facie* case, she would ultimately not prevail because there is no evidence showing that French Lick's reason for terminating her was pretextual.

Baker's first failure is in her inability to establish that she had engaged in protected activity. An inquiry into protected activity necessarily includes an analysis of whether the employee has "a sincere and reasonable belief that [s]he is opposing an unlawful practice." *Hamner*, 224 F.3d 706-07. "The objective reasonableness of the [plaintiff's] belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute." *Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008). Baker asserts that she complained of sexual harassment on two occasions: once, in her January 31, 2015 response to the French Lick Human Resources employment questionnaire, and, second, in a February 2015 email message to Stevens in reporting the inappropriate gift bag incident.[5] Even when viewed in the light most favorable to Baker,

---

[5] As noted above, Baker asserts that she also reported the body piercings incident to Spencer, who was another manager. Spencer, however, simply requested that Baker put the complaint in writing, which she did on January 31, 2015, and referred Baker's complaint to Stevens.

as we are required to do at this stage in the litigation, the evidence does not reflect that Baker's complaints on these two occasions constituted protected activity.

Baker's response in the Human Resources questionnaire does not include or reflect any complaint of sexual harassment, and general complaints unconnected to a protected class are insufficient to support a Title VII retaliation claim. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 888 (7th Cir. 2016) (holding that the plaintiff's complaint regarding pay was not protected activity as she did not mention race or discrimination); *Kodl v. Bd. of Educ. Sch. Dist. 45*, 490 F.3d 558, 563 (7th Cir. 2007) ("To constitute protected expression, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of . . . harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (internal quotation marks and citation omitted). Baker merely complained in that submission that Moon's discussion of her body piercings caused a lowering of Baker's opinion of her, regarding her as unprofessional. Nothing in Baker's response reveals an intent to report an incident of sexual harassment based on her sex.

Regarding Baker's second report to Human Resources,[6] there is again no evidence that the gift bag incident had anything to do with Baker's gender, as required under Title VII. The Seventh Circuit's decision in *Lord*, 839 F.3d at 563, again informs our analysis.

---

[6] French Lick has maintained that Stevens did not receive any e-mail message from Baker about the gift bag incident.

There, plaintiff's complaints concerned "workplace banter and conduct that had sexual overtones," but no evidence that the employee was harassed because of his sex. *Id*. So, too, with Baker. Moon's presentation of the inappropriate sexually suggestive gift was a tasteless attempt at humor, but nothing more. Baker concedes that Moon intended this as a joke and had perpetrated it on other employees previously.

The report on this event simply does not rise to the level of protected activity. Even if it were protected activity, Baker has failed to establish a causal connection between her report of the gift bag incident and any other adverse action taken against her, including her termination. To succeed, Baker is required to show that the protected activity was "a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Medical Center v. Nassar*,--U.S.--, 133 S.Ct. 2517, 2534 (2013); *Carlson v. CSX Transportation, Inc*., 758 F.3d 819, 828 n.1 (2014). Baker maintains that Moon was aware of her complaints to Human Resources, but admits that Moon was not responsible for any adverse actions, most significantly her termination decision; in fact, Baker does not know who on behalf of French Lick actually made the decision to terminate her employment. Her effort to establish a causal connection between any protected activity on her part and some adverse action falls decidedly short. Since this is an independent basis for granting summary judgment on her retaliation claim, we so hold. *Maarouf v. Walker Mfg. Co*., 210 F.3d 750, 755 (7th Cir. 2000) (holding that, absent evidence of a decision maker's knowledge of protected activity, plaintiff could not prove a causal connection between termination and a complaint of discrimination).

Baker's final attempt to salvage her retaliation claim rests on her assertion that, because her termination occurred within only a matter of months following her complaints that Moon was sexually harassing her, "a question of fact [exists] for the jury to decide."[7] Pl.'s Resp. at 24-25. Baker notes that she complained to the Human Resources Department in January and/or February 2015 and was terminated in May 2015. As the Seventh Circuit has held, "Temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Courts, in fact, frequently reject such arguments. *See, e.g.*, *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (finding a three-month gap between protected activity and termination insufficient to establish retaliation); *O'Leary*, 657 F.3d at 635 (holding that a two-month gap between protected activity and adverse employment action was "not strongly suggestive of retaliation"). There simply is no evidence of a causal link between Baker's allegedly protected activity and her termination, which French Lick asserts to have been based solely on her violation of its Workplace Violence

---

[7] This argument is truly a last ditch effort. Baker suggests that the temporal proximity between Moon's write-ups of her for workplace infractions and her complaints of harassment create a mosaic of evidence demonstrating an "ongoing campaign of retaliation by Moon." Pl.'s Resp. at 25. We do not tarry long in disposing of this argument. Beyond the fact that such discipline does not rise to the level of materially adverse actions constituting retaliation, *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016), there is no evidence here to show that a retaliatory motive caused the issuance of any of the write-ups. Baker quibbles over a few details relating to some of the infractions, but she admits committing all but one infraction that was issued. Moreover, there simply is no evidence to conclude that Baker's gender was the cause of the write-ups or that the write-ups had any bearing on French's Lick's legitimate reason for terminating Baker's employment.

Policy. To the extent Baker disputes this basis for her termination, claiming that she was terminated in retaliation for engaging in protected activity, there is a dearth of evidence to support her theory, including a total absence of any causal connection between the two.

Even if Baker succeeded in establishing a *prima facie* case of retaliation, French Lick has proffered a legitimate explanation for her termination, namely, that she made threats against Moon and their co-worker, Tinkle, in violation of French Lick's Workplace Violence Policy. Baker does not dispute that a violation of this policy would be a lawful basis for termination, but posits that French Lick has lied about this being its reason for terminating her employment, given her denials that she ever made such threats against Moon and their co-worker, Tinkle. If French Lick's reason for her termination were, in fact, a lie, it would constitute a pretext for its proffered non-discriminatory explanation for Baker's termination and we would discount it.

We find however, that, once again, the record before us does not support Baker's claim that French Lick's decision to terminate her was pretexual. To demonstrate pretext, a plaintiff must show "such weaknesses, implausibility, inconsistencies, or contradictions in [the employer's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [the employer] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (internal citation omitted). "In determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir.

2012). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Argyropolous v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008).

There is no such weak, implausible, inconsistent evidence here on the basis of which a jury could conclude that French Lick's stated reason for terminating Baker was not her violation of the Workplace Violence Policy. Although she has complained that she "was not even given the opportunity to deny" making the  threatening comments in connection with her termination (Pl.'s Resp. at 27), Baker lacks any evidence to show that French Lick did not possess an honest belief that Baker had indeed violated its Workplace Violence policy when it terminated her. *See Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) (emphasizing that the employer's explanation "must actually be shifting and inconsistent to permit an inference of mendacity"). The evidence adduced here shows that French Lick was diligent in investigating the allegations made by two employees that Baker had voiced threats against Moon and Tinkle and that its investigative findings informed its termination decision. Stevens Dep. at 37. So long as French Lick possessed a good faith belief that Baker had made these threats, French Lick was within its rights to terminate her employment on this basis. Thus, summary judgment is warranted on Baker's retaliation claim.

## III.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No.

27] is GRANTED. Final Judgment shall enter accordingly.

**IT IS SO ORDERED.**


Date: _____3/30/2018_____                    _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP
bburgan@taftlaw.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mmacchia@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com